UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>DAMIAN ANTONIO MURPHY, )<br>MARSHA ARLENE MASSENGILL, )<br>JAMES ANTHONY MCCORD, )<br>    **Defendants** ) | **REPORT AND RECOMMENDATION**<br>    CASE NO. 1:06cr00062 |

      This matter is before the undersigned on the motion to suppress filed on behalf of the defendant, Damian Antonio Murphy, ("the Motion") (Docket Item No. 43). Murphy's co-defendants, Marsha Arlene Massengill and James Anthony McCord, have each filed motions to join the Motion. (Docket Item Nos. 45, 46). The Motion is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition on the Motion. An evidentiary hearing was held before the undersigned on November 27, 2006. Based on the evidence presented and the arguments of counsel, and for the reasons set forth below, I recommend that the court deny the Motion.

*I. Facts*

      The defendants are charged in a multiple-count indictment with conspiracy to possess with the intent to distribute cocaine, in violation of 18 U.S.C. §§ 846, 841(a)(1), and possession and concealment of a forged and counterfeited obligation

-1-

and other security of the United States with intent to defraud, in violation of 18 U.S.C. § 472. The defendants have moved to suppress the admission into evidence of certain tangible items retrieved from the vehicle in which they were traveling at the time of their arrests and/or certain tangible items retrieved from their persons following their arrests. The defendants argue that these items were seized in violation of their Fourth Amendment right prohibiting unreasonable search and seizure.

The defendants all were arrested on June 6, 2006, in Wythe County, Virginia. Massengill was driving a Chevrolet Impala in which Murphy was traveling in the front passenger seat and McCord was traveling as a passenger in the back seat. Virginia State Trooper Danny Pruett testified that he was running stationary radar on Interstate 81 northbound when his radar unit indicated that Massengill's vehicle was traveling 95 miles per hour in a 65-mile-per-hour zone. Upon stopping the vehicle at approximately 6:35 a.m., Pruett asked Massengill for her driver's license and vehicle registration. She told Pruett that her name was Debbie Arlene Sanchez and gave him her date of birth. She informed Pruett that she had left her driver's license at home. She provided a Hertz rental agreement indicating that Sabrina Calloway was the authorized driver of the vehicle. When Pruett asked Murphy for his driver's license, he said he also had left his at home as well. At that point, when Pruett asked whether anyone in the vehicle had a driver's license, McCord stated that he did. The Alabama driver's licensed produced by McCord was issued in the name of Clarence Todd Drain and showed a date of birth of April 26, 1978. Pruett testified that this driver's license appeared to be thicker than a normal driver's license. He stated that, at that point, he took Massengill to his patrol car with him, leaving the other two defendants in the rental car. Upon returning to his car, Pruett checked the name Debbie Arlene Sanchez

and date of birth given in the National Crime Information Center, ("NCIC"), database, to determine whether an individual by this name had a valid driver's license. Pruett stated that he received no response, indicating that no license or state identification card had been issued to a person with that name and date of birth. Pruett testified that Massengill told him that the front seat passenger's name was Cory Murphy and that he had asked her to travel with him to New York to visit his ill grandmother. She stated that she knew the back seat passenger only as James. Pruett stated that Massengill appeared nervous when questioning her, hesitating before answering his questions.

Pruett testified that he then checked the driver's license produced by McCord issued in the name of Clarence Todd Drain. This check revealed no license or state identification card issued to a person with that name and date of birth. The check did reveal, however, that the driver's license number actually belonged to a female in Alabama. Pruett requested assistance at that time. He testified that when he realized that there was no one on the scene who could legally drive the vehicle, it would have to be impounded and fully searched. Pruett testified that when he informed McCord that the driver's license that he had provided was fake, McCord said something to the effect of "you're kidding." However, McCord later admitted that the driver's license was fake, that his name was James Anthony McCord and that his date of birth was September 24, 1959. When Pruett checked this information in the NCIC database, there was no response, indicating that no license or state identification card had been issued in that name either. Pruett then arrested McCord for possession of a fictitious driver's license. Upon McCord's arrest, Pruett searched a green duffle bag that McCord said belonged to him. Inside of the duffle bag, he found a fragment of a glass

pipe, a handheld dagger-type weapon, which McCord said was a letter opener, and a powdery substance, which McCord said was baking soda. McCord informed Pruett that Massengill was his brother's girlfriend, but that he did not know her name, nor did he know the name of the front seat passenger.

Pruett next spoke with Murphy, who informed him that his name was Cory Antonio Murphy and that his date of birth was September 24, 1977. A check of the NCIC database revealed that no driver's license or state identification card had been issued to an individual with that name and date of birth. Murphy stated that Sabrina Calloway, the individual to whom the rental car was leased, was his girlfriend. Pruett asked Murphy whether there were any illegal items in the vehicle, and Murphy said there were not. When Pruett asked whether he could search the vehicle, Murphy refused.

Upon placing Massengill under arrest for reckless driving and having no operator's license, Pruett searched her purse. He found a Jefferson County inmate identification card in the name of Marsha Massengill and a birth date of October 8, 1980. At that time, she admitted that her true name was Marsha Massengill, and she advised Pruett that she was wanted in Alabama on forgery charges. Pruett then ran this information in the NCIC database, confirming that Massengill was, in fact, wanted in Alabama on forgery charges.

Pruett then arrested Murphy for obstruction of justice based on his giving false information. After all of the defendants were arrested, a search of the trunk of the rental car revealed a duffle bag with make-up and female clothing and a small laptop

briefcase containing a grocery bag with more than $14,000 in currency. At that time, all of the defendants were advised of their *Miranda*[1] rights. Murphy indicated that the money found in the briefcase was his and that he planned to use it to purchase clothing and shoes to open a store. Although he claimed that he had earned the money from a lawn care business and had withdrawn it from a bank account, Murphy had no documentation to support his claim. A yellow Timberland t-shirt, containing 26 sheets of what appeared to be counterfeit currency, was retrieved from the glove box of the rental car.[2] When Pruett asked Murphy about the counterfeit money, he said that it was not his and that he was not aware of it. However, later, Murphy stated that when Pruett had taken Massengill to his patrol car, McCord had handed him the t-shirt and told him to place it in the glove box. Pruett testified that a drug dog later alerted on the $14,000 in currency, indicating the presence of illegal drugs.

All of the defendants were thereafter transported to the Wythe County Sheriff's Department. While being fingerprinted, Murphy told Pruett that he wanted to speak to him. He told him that he had lied about his identity because he was on parole for various drug convictions and that he was not supposed to be outside of the state of Alabama without the permission of his parole officer, which he did not have. He then informed Pruett that his real name was Damian Antonio Murphy and that his date of birth was June 17, 1976. Murphy was searched at the police station, but nothing was found. However, when McCord was searched, a plastic bag containing two smaller plastic bags, one of which contained what appeared to be crack cocaine, and one of which contained what appeared to be powder cocaine, were retrieved from the

---

[1] *Miranda v. Ariz.*, 384 U.S. 436, 444 (1966).

[2] Pruett testified that each sheet contained four $100 bills.

-5-

waistband of his underwear. The green duffle bag was further searched and a business card with the name of J. McCord was retrieved. A check of this name in the NCIC database revealed that J. McCord was wanted for distribution of narcotics in Alabama. At that time, authorities in Alabama were asked to send a photograph of J. McCord to the Wythe County Sheriff's Office. This picture matched the appearance of the back seat passenger.

Chris Chapman, another Virginia State Trooper, also testified. Chapman testified that he responded to the scene when Pruett requested assistance. He testified that he spoke with Murphy in front of the rental vehicle, making mostly small talk, while Pruett conducted his investigation. Chapman testified that when he attempted to get Murphy's identification, he was given the names "Cory Antonio Murphy" and "Cory Demetrius Murphy." Chapman testified that Murphy had a cell phone in his possession and showed him how to turn it on, as well as various phone numbers.

## *II. Analysis*

The defendants argue that the $14,000 in currency, the counterfeit currency, Murphy's cell phone containing assorted text messages and the drugs found in the duffle bag belonging to McCord should be suppressed. Specifically, Murphy first argues that the search of his person was illegal because his arrest for obstruction of justice was unlawful in that the officer did not have probable cause to place him under arrest. That being the case, Murphy argues that the cell phone retrieved from his person in a search incident to his arrest should be suppressed.

-6-

It is well-established that "[o]nce suspects occupying an automobile have been arrested, officers are permitted, as a contemporaneous incident to the arrest, to search their persons and also the passenger compartment of the automobile." *U.S. v. Dorlouis*, 107 F.3d 248, 255 (4th Cir. 1997) (citing *N.Y. v. Belton*, 453 U.S. 454, 460 (1981); *U.S. v. Taylor*, 857 F.2d 210, 214 (4th Cir. 1988)). The defendants do not assert that the arrests of either Massengill or McCord were unlawful. Thus, the threshold question here is whether the arrest of Murphy was lawful. If it was, then law enforcement was entitled to conduct a search of Murphy's person as well as the passenger compartment of the vehicle. For the following reasons, I find that Murphy's arrest was lawful.

Pruett testified that he arrested Murphy for obstruction of justice pursuant to Virginia Code Annotated § 18.2-460. This section states that any person who "knowingly and willfully makes any materially false statement or representation to a law-enforcement officer who is in the course of conducting an investigation of a crime by another is guilty of a Class 1 misdemeanor." Here, Murphy informed Pruett, during the course of conducting his investigation, that his name was Cory Antonio Murphy and that he had a driver's license which he had left at home. However, a check of the NCIC database revealed no response, meaning that no driver's license or state identification card had been issued in such name. Based on these facts, I find that, pursuant to Va. Code Ann. § 18.2-460, Pruett had probable cause to arrest Murphy for obstruction of justice. Therefore, I find that the items yielded from the search conducted incident to such a lawful arrest, i.e., the cell phone, should not be suppressed.

-7-

Regarding the remainder of the items the defendants seek to suppress, I find that these items were seized as the result of a lawful inventory search of the vehicle incident to the lawful arrest of the defendants. It is well-settled that inventory searches constitute a well-established exception to the warrant requirement of the Fourth Amendment. *See U.S. v. Brown*, 787 F.2d 929, 931 (4th Cir. 1986) (citing *Ill. v. Lafayette*, 462 U.S. 640, 643 (1983)). Moreover, in order for an inventory search to be valid, the vehicle searched must first be in the valid custody of the law enforcement officers conducting the inventory search. *See Brown*, 787 F.2d at 931-32 (citing *S.D. v. Opperman*, 428 U.S. 364, 374 (1976)). Finally, if the vehicle is in the lawful custody of law enforcement, the vehicle may be inventoried if the inventory is routine and is conducted pursuant to standard police procedures, as long as the purpose of the inventory is to secure the car or its contents and not to gather incriminating evidence against its owner. *See Brown*, 787 F.2d at 931 (citing *Opperman*, 428 U.S. at 375-76)). Here, Pruett testified that an inventory search of the vehicle was conducted on the scene after the defendants were arrested and before the vehicle was towed. Pruett testified that the search was conducted in accordance with Virginia State Police procedures to determine and secure the contents of the vehicle before it was towed. Pruett testified that in such circumstances, Virginia State Police policy required an impoundment sheet to be completed and the vehicle to be fully searched before being towed. Thus, the inventory search appears to have been conducted pursuant to standard policy. Finally, there is no evidence that the search was conducted *for the purpose of* gathering incriminating evidence against any of the defendants. At the time the search of the vehicle occurred, Pruett had no reason to believe that such evidence would be found in the vehicle given the fact that a pat-down of Murphy and McCord had yielded no weapons or other incriminating

evidence. Moreover, as Pruett testified, given that no one was able to drive the vehicle, it had to be impounded. That being said, I find that the inventory search of the vehicle was valid, that it did not violate the defendants' Fourth Amendment rights and that the items seized as a result of that search should not be suppressed.

*III. Conclusion*

Based on the above-stated reasons, I recommend that the court deny the Motion.

**PROPOSED FINDINGS OF FACT
AND CONCLUSIONS OF LAW**

Based on the evidence presented at the hearing, the undersigned now submits the following formal findings of fact, conclusions and recommendations:

1. Probable cause existed for Murphy's arrest for obstruction of justice;
2. The cell phone yielded from the search of Murphy's person incident to his lawful arrest should not be suppressed;
3. The inventory search of the vehicle was lawful;
4. The items yielded from the lawful inventory search of the vehicle should not be suppressed; and
5. The Motion should be denied.

**Notice to Parties**

Notice is hereby given to the parties of the provisions of 28 U.S.C. §636(b)(1)(C):

> Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendation to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge]. The judge may also receive further evidence to recommit the matter to the magistrate [judge] with instructions.

Failure to file written objection to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period the Clerk is directed to transmit the record in this matter to the Honorable Glen M. Williams, Senior United States District Judge.

The clerk is directed to send copies of this Report and Recommendation to all counsel of record.

Entered: November 28, 2006.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE